## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL DIXON | : | |
|             Petitioner, | : | |
| | : | |
|    v. | : | CIVIL ACTION NO.  15-0148 |
| | : | |
| | : | |
| LAWRENCE MAHOLLY, *et al.* | : | |
|             Respondents. | : | |

### MEMORANDUM OPINION

**Rufe, J.**                                                                                  **November 28, 2016**

Petitioner Nathaniel Dixon, through counsel, timely objects to the Report and

Recommendation ("R&R") of Magistrate Judge M. Faith Angell, which recommended that the

Court deny his petition for a writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254.  The R&R

carefully evaluated each of Dixon's five claims and concluded that the first three claims were

time-barred and that as to the remaining two claims, the state court decisions did not contradict

Supreme Court precedent.  In his objections, Dixon argues that the Magistrate Judge was

incorrect to dismiss the first three claims as untimely, and that she improperly deferred to the

state court rulings on the remaining two claims.  Upon careful review of the record, the Court

agrees with the thorough analysis set forth in the R&R and will overrule Dixon's objections.

## I.        BACKGROUND

Dixon is currently serving an aggregate term of 30 to 60 years imprisonment for

aggravated assault, arson, and criminal conspiracy.  He was convicted on April 16, 2003, by a

jury in the Philadelphia County Court of Common Pleas.  The Superior Court of Pennsylvania

set forth the facts leading to Dixon's arrest as follows:

> Appellant's convictions stem from the February 26, 2001 firebombing of 2047
> West Turner Street, Philadelphia, which was the location of a drug dealing

operation headed by Wanda Brown. Ms. Brown and Sheena Washington were eyewitnesses and victims and testified against Appellant at trial.

In February 2001, Appellant and his co-defendants Rondell Slaughter, Gerald Bundy, and Edward Whitley dealt drugs together in the area of 20th and Turner Streets in Philadelphia. Ms. Brown operated a drug-dealing and prostitution enterprise from 2047 West Turner Street. On February 26, 2001, Ms. Brown, Ms. Washington, Barney Cousins, Barry Powell, Randall Ferguson, two men identified only as "Mumbles" and "Reds," and an unidentified man were present at 2047 West Turner Street. At approximately 9:00 p.m., Appellant and his three codefendants entered the house. After a scuffle with Mumbles, Slaughter threw one Molotov cocktail "[t]owards the dining room" of the residence while Appellant threw another one "towards the steps," and both men fled in a green, Ford Taurus station wagon. A fire ensued.

Ms. Brown testified that her feet were burnt. Ms. Washington suffered second degree burns to the face and hands. Mr. Cousins sustained second degree burns to the face, arms, and chest. Mr. Powell sustained fractured heels on both feet as a result of jumping from the burning building. A man identified as David Bryant suffered a fractured leg and smoke inhalation.

Ms. Brown trafficked in prostitution as well as drugs, and following the fire, Appellant threatened her. She initially refused to cooperate with police and hid in an abandoned building in the area. After police located her, she started to cooperate as a witness.  On March 30, 2001, police arrested Appellant, who was exiting a 1992 black Oldsmobile and had a burn hole in his shirt, as well as Slaughter, who was exiting the green car used as the getaway vehicle on February 26, 2001. Appellant possessed keys to a Ford Crown Victoria, which was parked nearby. In the plastic molding of the Oldsmobile, police discovered forty-eight packets of crack cocaine and in the Crown Victoria, they found a jug containing a mixture of highly flammable materials.[1]

After sentencing, Dixon filed a timely appeal with the Superior Court.  On May 23, 2006, the Superior Court affirmed Dixon's judgment of sentence.  Dixon subsequently filed two *pro se* petitions pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA").[2]  The first petition, filed on May 16, 2007, sought *allocatur* to file a petition in the Supreme Court.  It was granted, but Dixon ultimately failed to file a petition in the Pennsylvania Supreme Court.  The second

---

[1] R&R at 2 (quoting *Com. v. Dixon*, 2265 EDA 2003 (Pa. Super. 2006), at 1-3 (citations omitted)).

[2] 42 Pa. C.S. § 9541.

PCRA petition, filed on May 19, 2010, was amended with the assistance of counsel, and denied

by the PCRA court on October 23, 2013.  Dixon timely appealed this denial to the Superior

Court, raising two claims.  He argued that trial counsel was constitutionally ineffective for:  (1)

advising Dixon to reject a plea offer that would have resulted in a significantly lower sentence;

and (2) failing to file a timely post-sentence motion objecting to the illegality of Dixon's

sentence.  The Superior Court dismissed Dixon's appeal and affirmed the PCRA court's decision

on December 31, 2014.  Dixon did not seek *allocatur* in the Pennsylvania Supreme Court.

Dixon filed a *pro* se petition for a writ of habeas corpus in this Court on January 9, 2015.

In it, he raised three claims: (1) trial counsel was constitutionally ineffective for failing to advise

Dixon to accept the government's plea offer; (2) trial counsel was constitutionally ineffective for

failing to raise a timely objection to the illegality of Petitioner's sentence; and (3) the PCRA

court erred by dismissing Dixon's PCRA petition without a hearing.[3]  Dixon's PCRA counsel

then entered an appearance and moved for leave to amend the petition, which the Court granted.[4]

Dixon filed the amended petition on April 29, 2015.[5]

The amended habeas petition included the first and second claims raised in the original

petition, as well as three new claims.  The five claims raised in the amended petition and which

Magistrate Judge Angell addresses in the R&R are: (1) trial counsel was constitutionally

ineffective for failing to advise Dixon to accept the government's plea offer; (2) trial counsel was

constitutionally ineffective for failing to raise a timely objection to the illegality of Dixon's

sentence; (3) the trial court violated Dixon's Sixth Amendment confrontation clause rights; (4)

the prosecutor violated Dixon's Sixth and Fourteenth Amendment rights by improperly

---

[3] Doc. No. 1 at 9.

[4] Doc. No. 4.

[5] Doc. No. 8.

referencing facts outside the record during closing argument; and (5) the trial court violated Dixon's Sixth and Fourteenth Amendment rights when it did not declare a mistrial after the jury declared itself deadlocked.[6]

## II.   LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[7] governs habeas petitions like the one before this Court.  Under the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States."[8]  Where, as here, the habeas petition is referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), a district court conducts a *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[9]

When the claims presented in a federal habeas petition have been decided on the merits in state court, a district court may not grant relief unless the adjudication of the claim in state court: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[10]

---

[6] Doc. No. 8 at 6-29.

[7] 28 U.S.C. § 2254.

[8] 28 U.S.C. § 2254(a).

[9] 28 U.S.C. § 636(b)(1).

[10] 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established law if the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."[11]  A decision is an "unreasonable application of" clearly established law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."[12]  The "unreasonable application" clause requires more than an incorrect or erroneous state court decision.[13]  Instead, the application of clearly established law must be "objectively unreasonable."[14]

A petitioner faces a high hurdle in challenging the factual basis for a prior state-court decision rejecting a claim.  The petitioner bears the burden of rebutting the state court's factual findings by clear and convincing evidence.[15]  Moreover, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[16]

## III.   DISCUSSION

Regarding the R&R's conclusion that the three claims raised for the first time in the amended petition were untimely, Dixon objects for three reasons: (1) he was granted permission to amend the complaint beyond the AEDPA deadline; (2) the additional claims were not of a different time or type from those set forth in the original habeas petition; and (3) he is entitled to

---

[11] *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

[12] *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).

[13] *Lockyer*, 538 U.S. at 75.

[14] *Id.*

[15] *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (internal quotations and citations omitted).

[16] *Id.* (internal quotation omitted).

equitable tolling on the basis of the best interests of justice.  Regarding the two timely claims, Dixon objects to the Magistrate Judge's deference to the state court decisions.  The Court will address each objection in turn.

    A.    *Timeliness of the Three Newly Added Claims*

First, Dixon argues that the Magistrate Judge improperly found the three later-added claims untimely because Dixon was expressly granted an additional 90 days to file an amended petition.  Magistrate Judge Angell acknowledged this fact, but determined that the new claims raised in the amended petition did not relate back to the filing date of the original pleading, making them untimely.  The Court agrees.

Under the AEDPA, state prisoners seeking federal habeas relief generally must file a petition within one year after the judgment of conviction becomes final.[17]  The AEDPA includes a tolling provision whereby "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . ."[18]

Dixon's conviction became final on August 24, 2009, which was his deadline for seeking *allocatur* from the Pennsylvania Supreme Court.  The one-year period for filing a habeas petition was tolled, however, while his second PCRA petition was pending.  On December 31, 2014, when the Superior Court affirmed the dismissal of Dixon's second PCRA petition, the statutory period restarted.  Dixon's original habeas petition was therefore timely, as it was filed on January 9, 2015, 97 days before the statute of limitations expired on April 7, 2015.  The Court granted

---

[17] 28 U.S.C. § 2244(d)(1).

[18] 28 U.S.C. § 2244(d)(2).

Dixon an extension of time to file an amended petition, and though Dixon met the Court's deadline, he filed the amended petition outside the statute of limitations period.

Amendments to pleadings which are filed outside the limitations period will relate back to the filing date of the original pleading, and will therefore be considered timely, if they arise from the same "conduct, transaction, or occurrence" as the original pleading.[19]  In a decision applying this Rule in the habeas context, the United States Supreme Court declined to allow relation back of a habeas claim where the "new claim stems from the habeas petitioner's trial, conviction, or sentence," because "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto."[20]  Instead, the Court held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims" and that a claim will not relate back if it is "supported by facts that differ in both time and type from those set forth in the original pleading."[21]

The Magistrate Judge was correct in finding the new claims to be untimely because they were not anchored to the same "common core of operative facts" as his other two claims. The additional claims raised in the amended petition—that the trial court violated Dixon's Confrontation Clause rights, that the prosecutor violated Dixon's Sixth and Fourteenth

---

[19] Fed. R. Civ. P. 15(c)(2).

[20] *Mayle v. Felix*, 545 U.S. 644, 650, 656-57 (2005).

[21] *Id.* at 659, 650.  Courts in this Circuit routinely apply this analysis to determine whether later-added claims relate back to the original habeas petition.  *See, e.g.*, *Eaddy v. Glunt*, No. CV 15-1399, 2016 WL 3538590, at *4 (E.D. Pa. June 29, 2016) (finding proposed new claim untimely because it differed "in both time and type"); *Hartman v. Deloy*, 890 F. Supp. 2d 498, 507-08 (D. Del. 2012) (denying petitioner's request to amend petition to add a claim with new legal theory unrelated to existing claims); *Flood v. United States*, 867 F. Supp. 2d 539, 553 (D. Del. 2012) (new claims did not relate back because they were factually and legally different).

Amendment rights during closing argument, and that the trial court violated Dixon's Sixth and Fourteenth Amendment rights when it did not declare a mistrial—concern alleged errors by the judge and the prosecutor during Dixon's trial.  In contrast, Dixon's original habeas claims—that trial counsel failed to advise Dixon to accept a plea deal and failed to object to Dixon's sentence—are claims of ineffective assistance of counsel, and concern the periods before and after trial.  Thus, while Dixon's new claims may relate to the "same trial, conviction, or sentence," they are of a different time and type than the original claims.[22]  The fact that Dixon was granted an extension does not exempt him from the rules governing amendment.[23]

Dixon's final argument with regard to the untimely claims is that this case presents the "rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice" because (1) he has diligently pursued his claims; and (2) extraordinary circumstances exist which prevented timely filing.[24]  According to Dixon, the extraordinary circumstance in this case is that the Court granted his Motion for Leave to Amend and request for an extension of time to do so.  Dixon states, "[h]ad counsel known that she could not rely on

---

[22] Dixon's second argument with regard to timeliness is that the claims are not supported by facts of a different time and type than those set forth in the original petition. Doc. No. 25 at 5-6. Dixon argues that the new claims are part of a common core of operative facts, pointing to the ineffective assistance of counsel claims in support: "[a] claim that counsel's advise [sic] was objectively unreasonable is by its very nature, dependent upon an assessment of the weight and credibility of the Commonwealth's evidence." *Id.* at 6. However, this is essentially an argument that Petitioner's new claims relate back because they stem from the same trial as his timely claims, which the Supreme Court has rejected. *See Mayle*, 545 U.S. at 656-57. As discussed above, the new claims are both factually and legally distinct, and the magistrate judge was correct to conclude that the new claims were of a different time and type than the original claims.

[23] *See, e.g., Dominguez v. Williams*, No. 2:12-CV-01609, 2014 WL 4635741, at *3 (D. Nev. Sept. 16, 2014) ("[C]ounsel, unlike [petitioner], is not a *pro se* litigant who is inexperienced in the law. Counsel would need to take into account the possibility that an amended petition or an extension of time might run afoul of the statute of limitations."); *Sonner v. Baker*, No. 2:00-CV-1101, 2013 WL 1249575, at *7 (D. Nev. Mar. 26, 2013) (finding no relation back where the court granted extensions of time to file an amended petition, and reasoning that the court's orders did not come "with any assurance or suggestion that new claims for relief in the amended petition would relate back to the initial petition for timeliness purposes").

[24] Doc. No. 25 at 3-4.

the new deadline that the Court granted for filing the amended petition, she would have filed it on or before April 7, 2015."[25]

The fact that Dixon was granted leave to amend the petition does not amount to an extraordinary circumstance.  "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."[26]  The extraordinary circumstance inquiry focuses on "how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline"; [27] examples of extraordinary circumstances include attorney misconduct that amounts to "egregious behavior"[28] and the "inability to read or understand English, combined with denial of access to translation or legal assistance."[29]  Here, the fact that Dixon was granted leave to amend the petition, and the failure of counsel to foresee that new claims not anchored to the same "common core of operative facts" as previous claims would not be considered, do not present the sort of circumstances that courts consider "extraordinary."  Accordingly, Dixon's objections concerning the three untimely claims will be overruled.

B.     *Ineffective Assistance of Counsel Claims*

Dixon next objects to the dismissal of his two timely claims—both alleging ineffectiveness of counsel—that the Magistrate Judge determined were reasonably rejected by the state courts.

---

[25] Doc. No. 25 at 3.

[26] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

[27] *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).

[28] *Holland v. Florida*, 560 U.S. 631, 651 (2010).

[29] *Pabon*, 654 F.3d at 400.

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in *Strickland v. Washington*.[30]  Under *Strickland*, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the petitioner.[31]  Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[32]  Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[33]  For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[34]  Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a petitioner must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[35]  In evaluating the Pennsylvania courts' treatment of ineffectiveness claims, the Court must determine whether the state courts' "application of *Strickland* to [petitioner's] ineffectiveness claim was objectively unreasonable [and] . . . resulted in an outcome that cannot reasonably be justified under *Strickland*."[36]

---

[30] 466 U.S. 668 (1984).

[31] *Id*. at 687.

[32] *Id*. at 690.

[33] *Lewis v. Horn*, 581 F.3d 92, 106-07 (3d Cir. 2009).

[34] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991)).

[35] *Strickland*, 466 U.S. at 694.

[36] *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

1.      Failure to Recommend that Dixon Accept the Commonwealth's Plea Offer

Dixon's claim that counsel was ineffective for failing to recommend that he accept the Commonwealth's plea offer was fully presented to the state court, which rejected this claim based on Dixon's repeated insistence that he was innocent.  The PCRA court held that "as a matter of policy," it would not find Dixon's trial counsel ineffective for failing to advise Dixon to commit perjury.[37]  The R&R concluded that the PCRA court's finding that prejudice had not been established was not an unreasonable application of *Strickland* given the circumstances of Dixon's case, namely that he had repeatedly maintained his innocence.

Dixon objects, arguing that the mere fact that he asserted his innocence did not compel the conclusion that counsel was not ineffective for failing to advise him to accept the plea offer. According to Dixon, to hold that a lawyer cannot be found ineffective for failing to advise his client to lie "is [a] naïve view of the realities of the law."[38]  And, because defendants are sometimes permitted to withdraw guilty pleas based on an assertion of innocence, it is clear that some defendants lie about their guilt.[39]  Dixon argues that he is entitled to a hearing on this issue because his request for a hearing was denied by the state court, and maintains that his counsel was ineffective under *Strickland* because "but for counsel's deficient advice [not to plead guilty], Petitioner would have pled guilty."[40]

Dixon further argues, as he did in his amended petition, that the Supreme Court's holding in *Lafler v. Cooper* requires finding that his trial counsel was ineffective.[41]  In *Lafler*, the

---

[37] *Dixon*, 2995 EDA 2013, at 7.

[38] *Id.*

[39] *Id.* at 6-7.

[40] *Id.* at 8.

[41]132 S. Ct. 1376, 1383 (2012).

Case 2:15-cv-00148-CMR   Document 30   Filed 11/28/16   Page 12 of 14

Supreme Court held that the petitioner's trial counsel was ineffective under *Strickland* for failing to advise the petitioner to accept the government's plea offer.[42]  However, *Lafler* is distinguishable: there, all counsel agreed that the offer had been rejected as a result of trial counsel's deficient performance in providing incorrect information.[43]  Here, the Commonwealth has not agreed that it was unreasonable for trial counsel to advise Dixon not to accept the plea offer, and indeed the Superior Court found it was not unreasonable considering Dixon had repeatedly declared he was innocent.  Thus, Dixon's reliance on *Lafler* is misplaced.

Given that Dixon had maintained his innocence in this case, it was reasonable for the Superior Court to find that trial counsel was not ineffective for failing to advise Dixon to commit perjury by admitting guilt.  Dixon has failed to establish that the Superior Court's decision in this regard was contrary to, or an unreasonable application of, U.S. Supreme Court precedent,[44] and the R&R was correct to conclude that Dixon was not entitled to an evidentiary hearing.[45]

2.     Failure to Object to Illegality of the Sentence Imposed

Dixon's claim that counsel failed to object to the supposed illegality of the sentence imposed was also fully presented to the state court.  Dixon objects to the R&R's deference to the state court in finding that consecutive sentences based on a single act did not violate the double jeopardy clause of the Constitution.  The Magistrate Judge was correct, however, because as she noted, Dixon's argument was based entirely on *Commonwealth v. Walker*, which has been

---

[42] *Id.* at 1390.

[43] *Id.* ("The instant case comes to the Court with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel").

[44] R&R at 13; *see also* 28 U.S.C. § 2254(d).

[45] *See Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987) ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing").

overruled.  *Walker* held that a single act mandated a single punishment,[46] but was later overruled by *Commonwealth v. Frisbie*, in which the Pennsylvania Supreme Court stated, "the imposition of multiple sentences upon a defendant whose single unlawful act injures multiple victims is legislatively authorized and, consequently, does not violate the double jeopardy clause of the Fifth Amendment."[47]

    In his objections, Dixon abandons his *Walker* argument and instead quotes a 1980 Ninth Circuit opinion which held that a court "may not impose consecutive sentences for a single transaction that violates more than one statutory provision or purpose unless Congress has clearly expressed its intent to make each violation within that single transaction a separate offense subject to separate punishment."[48]  In *Frisbie*, the Pennsylvania Supreme Court expressly determined that sentences like the one imposed in his case were permissible. Trial counsel was not constitutionally ineffective for failing to object to the nature of Dixon's sentence, because Dixon's argument regarding his sentence is meritless.  As such, the Magistrate Judge was right to determine that Dixon has not shown that the state court decision concerning this claim was contrary to, or an unreasonable application of, U.S. Supreme Court precedent.

## IV.     CONCLUSION

    The objections to the R&R are overruled.  Because Dixon has not made a substantial showing of the denial of a constitutional right, the Court holds, in accordance with the judgment of the Court of Appeals, that a certificate of appealability should not issue.  There is no basis for holding that "reasonable jurists could debate whether . . . the petition should have been resolved

---

[46] *Com v. Walker*, 362 A.2d 227, 232 (Pa. 1976).

[47] *Com. v. Frisbie*, 485 A.2d 1098, 1101 (Pa. 1984).

[48] *Brown v. United States*, 623 F.2d 54, 57 (9th Cir. 1980).

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[49]  An appropriate Order follows.

---

[49] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and quotations omitted).